UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No. _____

BERKLEY ASSURANCE COMPANY,

    Plaintiff,

v.

EXPERT GROUP INTERNATIONAL INC.,
d/b/a EXPERT AU PAIR,

    Defendants.
_____/

## COMPLAINT

Plaintiff, BERKLEY ASSURANCE COMPANY, sues EXPERT GROUP INTERNATIONAL INC., d/b/a EXPERT AU PAIR, and states as follows:

### PARTIES

1. BERKLEY ASSURANCE COMPANY, ("**Berkley**") is incorporated in the State of Iowa with its principal place of business in the State of Arizona. Pursuant to Section 28 U.S.C. §1332(c)(1), Berkley is a citizen of the State of Iowa. At all times, Berkley was authorized to write policies of insurance in the State of Florida.

2. EXPERT GROUP INTERNATIONAL INC. d/b/a EXPERT AU PAIR ("**Expert Au Pair**" or the "**Insured**"), is a Florida Corporation with its principal place of business in St. Petersburg, Florida. Expert Au Pair is in the business of placing foreign citizens, who provide au pair services, with families residing in the United States.

## JURISDICTION AND VENUE

3. This Complaint is brought pursuant to the Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, and is an action for declaratory judgment with an amount in controversy in excess of $75,000.00, exclusive of interest, costs, and attorneys fees.

4. An actual case and controversy of a justiciable nature exists between Berkley and the Insured, including the rights, duties, and obligations, if any, of the parties under the insurance policies identified below which were issued by Berkley.

5. There is diversity of citizenship as defined in 28 U.S.C. § 1332, to the extent and degree required by law. The action sought herein arose from acts which occurred in the Middle District of Florida.

6. Expert Au Pair is subject to the jurisdiction of this Court by virtue of its Florida residency and its continuous and systematic contacts with the State of Florida.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## THE POLICY OF INSURANCE

8. BERKLEY originally issued an insurance policy to the Insured for the period February 14, 2015, to February 14, 2016 (# VUMC0080320). Berkley then renewed the insurance policy for the period February 14, 2016, to February 14, 2017 (# VUMC0080321). The original and renewed policies are collectively referred to herein as "the **Policy**" and attached hereto as composite **Exhibit A** and incorporated herein by reference.

9. The Policy provides Professional Liability Errors and Omissions ("**E&O**") coverage. The Insuring Agreement of the E&O coverage provides as follows:

*SECTION I – COVERAGE*

A. *Insuring Agreement*

1. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of a negligent act, error or omission in the rendering of or failure to render "professional services" for others for a fee provided always that:

    a. The "claim" on account of such negligent act, error or omission is first made against insured during the policy period and reported to us, in compliance with Section VII—Conditions—Item B, as soon as practicable;

    \*   \*   \*   \*

    c. Such negligent act, error or omission took place after the retroactive date, if any, shown in the Declarations and before the end of the policy period; and

    d. As of the inception date of this policy, no insured, had any knowledge of any circumstance likely to result in or give rise to a "claim" nor could have reasonably foreseen that a "claim" might likely be made.

    *For purposes of paragraph 1.a. of Section I – Coverage A … if during the policy period … the insured gives written notice to us …of a negligent act, error or omission likely to result in a "claim", then any "claim" that may subsequently be made against the insured arising out of such negligent act, error or omission shall be deemed to have been made during the policy period….*

2. We will have the right and duty to defend the insured against any "suit" seeking "damages" to which this insurance applies. However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply.

3

10. The E&O coverage provides the following definitions for the key terms "Claim" and "Professional Services":

> **SECTION VIII – DEFINITIONS**
>
> A. *"Claim" means a demand or assertion of a right. All "claims" of all persons or entities arising out of the same negligent act, error or omission or a "series of related negligent acts, errors or omissions" shall be treated as a single "claim" and shall be deemed to have been made at the time that the first of those "claims" is made against any insured;*
>
> \*    \*    \*    \*
>
> B. *"Professional services" means the description on the Coverage Part Declarations.*

The Coverage Part Declarations of the Policy defines "professional services" as "recruits and monitors foreign *au pairs* from overseas on visas."

11. The E&O coverage sets forth exclusions, including but not limited to the following:

> *This insurance does not apply to:*
>
> 4. *Workers' Compensation, Employment Injury and Similar Laws*
>
>    *Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law, or any similar law or any "claim" arising out of any refusal to employ, termination of employment, employment related discrimination or other employment related practices or policies.*
>
> \*    \*    \*    \*
>
> 6. *Criminal, Dishonest or Fraudulent Acts*
>
>    *Any "Claim" based upon, arising out of, or in any way involving any deliberately dishonest, fraudulent, criminal or malicious act, error or omission by or on behalf of or at the direction of the*

4

> *insured, if a judgment or other final adjudication adverse to the insured establishes that the insured committed a criminal, dishonest, or fraudulent act, error or omission; provided, however, any criminal, dishonest, fraudulent or malicious act, error or omission pertaining to any insured under this policy shall not be imputed to any other insured under this policy for the purpose of determining the applicability of this exclusion.*
>
> \*    \*    \*    \*
>
> *17.    Expected or Intended Damage*
>
> *Any "damages" expected or intended from the standpoint of the insured.*

12.    The Policy also provides Commercial General Liability ("**CGL**") coverage. The Insuring Agreement of the CGL coverage provides as follows:

> *1.    **Insuring Agreement***
>
> *a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.*
>
> \*    \*    \*    \*
>
> *b.    This insurance applies to "bodily injury" and "property damage" only if:*
>
> > *(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.*
>
> *d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured*

5

> *listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:*
>
> > *(1)   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;*
> >
> > *(2)   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or*
> >
> > *(3)   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*

13. The CGL coverage provides the following definitions for key terms "bodily injury" and "occurrence" and "property damage":

> 3.   *"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.*
>
> > \*        \*        \*        \*
>
> 13.  *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*
>
> > \*        \*        \*        \*
>
> 17.  *"Property damage" means: a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

14. The CGL coverage sets forth exclusions to coverage, including but not limited to the following:

6

*Expected Or Intended Injury*

*"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*

## THE UNDERLYING LAWSUIT

15. EXPERT AU PAIR is a defendant in a lawsuit pending in the United States District Court For The District of Colorado, Case No. 14-cv-03074-CMA-CBS (the "**Underlying Lawsuit**").

16. On November 13, 2014, the plaintiff filed the original Complaint in the Underlying Lawsuit. On January 30, 2015, an attorney filed a Notice of Appearance on behalf of Expert Au Pair. Both events predate the inception date and policy period for the Policy obtained by Expert Au Pair from Berkley.

17. The original Complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit B** and incorporated by reference. The operative pleading, the *Second Amended Complaint*, is attached hereto as **Exhibit C** and incorporated by reference.

18. In the original Complaint, the sole named plaintiff was Johana Paola Beltran, purporting to represent a class of similarly situated plaintiffs. The original Complaint alleged that Expert Au Pair and other co-defendants had conspired, in violation of the federal Sherman Act, to depress the wages of Au Pairs working in the United States.

19. Violations of the Sherman Act, at 15 U.S.C. §1, are punishable by both civil and criminal penalties.

20. For example, the original Complaint alleged that Expert Au Pair conspired to set the wage rates for the industry "far below the market rate " and to create a wage floor "even

though this wage floor was a per se violation of the wage laws of the several states and in application would necessarily violate the FLSA." [Exhibit A Introductory Statement, ¶ 28].

21. The co-defendants in the Underlying Lawsuit include INTEREXCHANGE, INC., ("**InterExchange**") which is also in the business of placing foreign au pairs with families in the United States and, allegedly, part of the conspiracy with Expert Au Pair.

22. The original Complaint alleged that InterExchange sponsored the original named plaintiff, JOHANA PAOLA BELTRAN, with a Colorado family. Based on Ms. Beltran's standing to assert claims against InterExchange, and on behalf of similarly situated plaintiffs, the original Complaint raised the following claims: Count I - conspiracy in restraint of trade (all defendants); Count II - failure to pay minimum wage under the FLSA (InterExchange); Count III - unpaid wages under state law (InterExchange); Count IV - breach of fiduciary duty (InterExchange); Count V - violation of New York state wage act (InterExchange); and Count VI – unpaid wages under Colorado law (the Colorado family).

23. The Second Amended Complaint filed in the Underlying Lawsuit added NICOLE MAPLEDORAM as a named plaintiff. Ms. Mapledoram alleges that she was sponsored by Expert Au Pair and placed with a family in the United States.

24. Just as Ms. Beltran had brought additional claims against her sponsor InterExchange beginning with the original Complaint, Ms. Mapledoram alleged the following claims against her sponsor, Expert Au Pair, in the Second Amended Complaint: Count I – conspiracy in restraint of trade: Count III – breach of fiduciary duty; Count IV – negligent misrepresentation of state laws; Count V – fraudulent concealment; Count VI – state consumer protection law violations; and Count VIII – failure to pay minimum wage under the FLSA; and Count IX - unpaid wages under state law.

## COUNT I – DECLARATION BY THE COURT THAT BERKLEY HAS NO OBLIGATION TO PROVIDE COVERAGE UNDER THE POLICY

25. Berkley incorporates by reference and re-alleges the allegations set forth in paragraphs 1 through 24, as if fully set forth herein.

26. Berkley contends that its Policy does not afford coverage for the claims raised in the Underlying Lawsuit and that Berkley is not required to defend any insured in the Underlying Lawsuit.

27. Expert Au Pair obtained the Policy from Berkley over three months <u>after</u> the filing of the original Complaint in the Underlying Lawsuit.

28. The Insuring Agreement for the E&O coverage provides that E&O Coverage applies only if "[a]s of the inception date of this policy, no insured, had any knowledge of any circumstance likely to result in or give rise to a "claim" nor could have reasonably foreseen that a "claim" might likely be made."

29. Based on the allegations of the original Complaint filed in the Underlying Lawsuit, Expert Au Pair had "knowledge of any circumstance likely to result in or give rise to a 'claim'" prior to the inception date of the Policy for purposes of E&O coverage.

30. Also, based on the allegations of the original Complaint filed in the Underlying Lawsuit, Expert Au Pair "could have reasonably foreseen that a 'claim' might likely be made" prior to the inception of the Policy for E&O coverage.

31. In addition, exclusions applicable to the E&O coverage – including those for "*Workers' Compensation, Employment Injury and Similar Laws*" and *Criminal, Dishonest or Fraudulent Acts*" and "*Expected or Intended Damage*" – apply to the claims made in the Underlying Lawsuit.

32. The Insuring Agreement for the CGL coverage provides that coverage applies only if "[p]rior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period."

33. Based on the allegations of the original Complaint filed in the Underlying Lawsuit, Expert Au Pair had "prior knowledge" of the claims prior to the policy period for purposes of CGL coverage.

34. In addition, the claims raised in the Underlying Lawsuit do not constitute "bodily injury" or "property damage" or an "occurrence" as defined in the Policy for purposes of CGL coverage.

35. In addition, exclusions applicable to the CGL coverage – including "expected or intended injury" – apply to the claims made in the Underlying Lawsuit.

36. Berkley is in doubt as to its rights, status, and other legal and equitable obligations arising from the accident set forth above.

**WHEREFORE**, Berkley requests the Court to adjudge and decree that:

(a) The Policy of Insurance issued by Berkley to Expert Au Pair does not afford coverage for the claims and allegations made in the Underlying Lawsuit.

(b) Berkley is not required to defend Expert Au Pair against the claims and allegations raised in the Underlying Lawsuit.

10

    (c)    Berkley be granted such other and further relief as the Court deems equitable, just and reasonably necessary to afford complete relief.

    Respectfully submitted this 21st day of December 2016,

*/s/ David C. Borucke*

David C. Borucke (Trial Counsel)
FBN: 39195
E-mail: david.borucke@csklegal.com
Aram P. Megerian (Trial Counsel)
FBN: 057983
E-mail: aram.megerian@csklegal.com
COLE, SCOTT & KISSANE, P.A.
4301 West Boy Scout Boulevard, Suite 400
Tampa, Florida 33607
Telephone: (813) 289-9300
Facsimile: (813) 286-2900

*Attorneys for Plaintiff Berkley Assurance Company*