UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BERKLEY ASSURANCE COMPANY,

    Plaintiff,

v.                                                         CASE NO.  8:16-cv-3466-T-02JSS

EXPERT GROUP INTERNATIONAL INC.
d/b/a Expert Au Pair,

    Defendant.
_____/

## ORDER GRANTING FINAL SUMMARY JUDGMENT

This matter comes before the Court on cross motions for summary judgment filed by Plaintiff Berkley Assurance Company ("Berkley") and Defendant Expert Group International Inc. d/b/a Expert Au Pair ("EAP"). The Court grants Berkley's Motion (Dkt. 45) and denies EAP's motion (Dkt. 49).

EAP is one of several businesses in the country that recruits, arranges, brokers, sponsors, and pays foreign au pairs for services to families in the United States. EAP and several other au pair broker services were sued in 2014 in a "wage suppression" class action in Colorado United States District Court, 1:14-cv-03074-CMA (D. Co.). This federal Colorado action is the "underlying suit" in this insurance coverage dispute.

Berkley filed this declaratory action to establish that it owed no duty to defend or indemnify to its insured EAP in the underlying suit. The underlying original complaint

was expanded twice by amendment, but each of the three complaints at issue asserted the same gravamen against EAP: a nationwide conspiracy to suppress au pair wages illegally. It is uncontested that at the time EAP applied for the policy at issue[1] [which was *after* the first amended complaint] EAP knew of circumstances that could result in a potential future claim, yet indicated "No," it did not.

A simple time line shows why the "prior knowledge" exclusion bars EAP's request for coverage:

| | |
|---|---|
| Nov. 13, 2014 | EAP is named in underlying Colorado federal class action law suit. EAP's CEO Gaulter heard "rumors" of the suit prior to its service on EAP in early 2015. The complaint's allegations were detailed and wide-ranging. |
| Feb. 2, 2015 | EAP puts its then-insurer [not Berkley] on notice of the suit and requests a defense/indemnification. The then-insurer provides a defense under reservation of rights, by letter 4/5/2015. |
| Feb. 4, 2015 | EAP's Gaulter prepares the first Berkley insurance application, stating "No" as to whether EAP or agents were "aware of any fact, circumstance, situation, incident or allegation of negligence or wrongdoing, which might afford grounds for any claim such as would fall under the proposed insurance." |
| Feb. 14, 2015 - Feb. 14, 2016 | The first Berkley 12-month policy is issued and expires. |

---

[1] Policy VUMC0080321, coverage date February 14, 2016 - February 14, 2017.

| | |
|---|---|
| March 13, 2015 | EAP is served with a First Amended Complaint in the underlying suit. It expanded theory of liability and parties, but basically kept the original "au pair wage suppression conspiracy" theme. Individual au pairs are added as wage claimants, but none sponsored by EAP. |
| Nov. 15, 2015 | The EAP former insurer Colony [not Berkley] followed up on the April reservation of rights and filed a declaratory judgment action against EAP seeking to avoid coverage for the underlying suit. EAP contested the matter. |
| January 2016 | A second prior EAP insurer (Burlington) denied coverage for the Colony declaratory suit. |
| January 2016 | EAP sent notice and demand to Berkley seeking a defense from Berkley in the Colony declaratory judgment action. Berkley declined coverage of the Colony declaratory action, on January 15, 2016. In this letter Berkley noted it had reviewed the underlying au pair wage suit. Berkley noted the inception of this suit was prior to Berkley's coverage; thus Berkley told EAP no coverage would exist for the underlying, preexisting au pair wage suit. |
| Feb. 12, 2016 | EAP's Gaulter prepared a renewal application for coverage with Berkley. He again answered "No" to the prior knowledge question, denying EAP's awareness "of any fact, circumstance, situation, incident or allegation of negligence or wrongdoing, which might afford grounds for any claim such as would fall under the proposed insurance." |
| Feb. 14, 2016 - Feb. 14, 2017 | The term of the renewal Berkley policy that is at issue. |

| August 17, 2016 | EAP was served with a Second Amended Complaint in the underlying au pair wage suit. Plaintiffs' same theory of liability existed. A new au pair plaintiff (Miss Mapledoram) was added. Miss Mapledoram was sponsoree of EAP. This addition permitted Plaintiffs' counsel to include EAP as defendant in six additional wage-related counts for the first time. EAP reported these new counts to Berkley, contending the new counts were "claims" within the renewed Berkley policy. |
|---|---|

The main part of Defendants' argument is that EAP could not and did not know in advance that an EAP au pair would sue EAP for personal wage claims and negligent misrepresentation in the third version of the underlying complaint. This point is devoid of merit.

The prior knowledge limitation of the policy is that:

> As of the inception date of this policy, no insured, had any knowledge of any circumstance likely to result in or give rise to a "claim" nor could have reasonably foreseen that a "claim" might likely be made.

This is broad language: "any knowledge of any circumstance."

At the time CEO Gualter stated "No" to this prior knowledge question, on February 12, 2016, in applying for policy VUMC0080321, Gaulter and EAP and any percipient observer knew the following eight points:

1) EAP had been sued in an initial complaint on 11/13/14 as "an illegal cartel . . . that set wage rates for the industry for below the market rate . . ." 1:14-cv-03094-CMA (D. Co.) (Dkt. 1-2).  This Sherman Act conspiracy was alleged to be nationwide.

2) That the named plaintiff in the initial underlying complaint was suing on behalf of "others similarly situated" in the price-fixing (wage suppression) class that included the au pairs sponsored or brokered by EAP.  Plaintiff estimated this class size, seeking class representative status, to include 50,000 au pairs.

3) The plaintiff's initial complaint sought treble damages, injunctive relief and fees against EAP for an illegal restraint of trade, i.e., collusive au pair wages suppression.  Back wages were the underlying damages sought.  Id. (Dkt. 1-2, at 18-21).

4) That EAP's recruiting/marketing website was described in the initial complaint as part of the anti-competitive wage-reduction cartel, alleged to be violative of various state laws where the au pairs worked, and the Fair Labor Standards Act.

5) Besides class representation status, the individual named plaintiff in the initial complaint sought her personal back wages against her sponsoring company (not EAP) based on the state law where she worked, also alleging breach fiduciary duty to the au pairs.

6) On 3/13/15 EAP was served with a First Amended Complaint.  (Dkt. 47-3, Ex. Ex. 35; Dkt. 47-1, Gual at 54-55, 87-88).  This complaint made similar wage-suppression claims as the original.  Four additional individual au pairs joined the original one as

named plaintiffs, and sued their sponsoring companies (none were EAP) for similar wage-related claims.

7) By April 2015 CEO Gaulter stated EAP was "exposed to millions of dollars in damages" by the wage-suppression claim. (Dkt. 46-2, Ex. 6, at 3). EAP was actively fighting in Court the allegations that it conspired to suppress the wages of its au pairs.

8) By January 2016 one prior insurer, Colony, had filed a declaratory action to avoid coverage. Both Berkley and a second insurer, Burlington, denied EAP's request to defend EAP in this Colony declaratory action. Berkley told EAP then in writing no Berkley coverage existed for this underlying wage suppression law suit.

It is uncontested that all the facts in items 1-8 above were known by EAP and its CEO. It defies credence that in February 2016, CEO Gaulter, knowing all these facts, and with the benefit of two very lengthy, serious underlying complaints, could indicate "No" to application No. VUMC0080321 that EAP was unaware of "any fact, circumstance, situation, incident or allegation of negligence or wrongdoing, which might afford grounds for any claim . . . ."

As could be expected given the underlying case trajectory, in August 2016 the complaint alleging wage-suppression conspiracy was amended yet again, and this time to add four other au pairs individually, including an EAP sponsoree, Miss Mapledoram. Mapledoram's presence permitted the plaintiffs to expand the complaint against EAP beyond Count I [Sherman Act § 1] to Counts III [fiduciary duty], IV [negligent

misrepresentation], V [constructive fraud or fraudulent concealment], VI [consumer protection], VIII [unpaid wages/overtime Fair Labor Standards Act], and IX [unpaid wages – state law]. Each of these new counts were expressly asserting the original claim – unlawful wage suppression.

EAP is correct that the addition of Miss Mapledoram in August 2016 allowed the underlying plaintiffs to bring "new" legal claims against EAP. But those counts just sought new remedies against the same original claim: wage cheating by EAP.

Moreover, that those counts might be "new" ignores the issue. The issue, which is not in doubt, is that prior to the February 2016 application for insurance policy VUMC0080321, there were evident "any circumstances" or allegations of EAP wrongdoing which might give rise to a claim.

EAP notes that its CEO Gaulter is "a former university professor with a PhD in statistics, author of at least six advanced-level statistics books." (Dkt. 49, at 13). This brilliant man was assisted by a number of able EAP lawyers. Even an unschooled and unskilled observer could tell there were "any circumstances" in early February 2016 and allegations of EAP wrongdoing that "might likely" lead to claims against EAP.

Berkley also contends that no commercial general liability coverage exists because the "wage and suppression conspiracy" alleged is not "bodily injury" or "property damage" as defined by the policy terms. It is unnecessary to reach this issue as this

portion of the insurance also has a prior knowledge provision which controls and bars coverage.

## LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the movant can show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Forman, 509 F.3d at 1356). A moving party discharges its burden by showing that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely

on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value.").

In the context of cross motions for summary judgment, the denial of one does not require the grant of another. Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co., 541 F.Supp.2d 1295, 1297 (M.D. Fla. 2008). Summary judgment is always inappropriate if disputes remain as to any material facts. Id. at 1298.

**B. Contract Interpretation**

As noted by the parties, "[t]he interpretation of an insurance contract is a question of law." Kattourn v. N.H. Indem. Co., 968 So.2d 602, 604 (Fla.Dist.Ct.App. 2007). It is undisputed that Florida law governs the interpretation of Defendant's insurance policy in this case. "Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000). Accordingly, the scope and extent of coverage are determined by the language and terms of the policy, and the policy terms are given their plain and ordinary meaning. "It is a cardinal principle of insurance law that where the provisions of an insurance policy are clear and unambiguous, the terms of the policy will be accorded their plain meaning and enforced as written." Northland Cas. Co. v. HBE Corp., 160 F.Supp.2d 1348, 1358 (M.D. Fla. 2001); see also Ernie Haire Ford, 541 F.Supp.2d at 1298.

Courts routinely affirm the denial of coverage where an insurance policy contains an unambiguous "prior knowledge" provision and where an insured has knowledge, prior to the effective date of the policy, of acts or omissions that might reasonably provide the basis for a claim. See, e.g., Lawyers Prof'l Liab. Ins. Co. v. Dolan, Fertig & Curtis, 524 So.2d 677, 678 (Fla.Dist.Ct.App. 1988) (holding prior knowledge provision clearly and unambiguously barred coverage for claim of which insureds were aware before policy's effective date); Coregis Ins. Co. v. McCollum, 961 F. Supp. 1572, 1579 (M.D. Fla. 1997) (same); see also Cuthill & Eddy, LLC v. Continental Cas. Co., 784 F.Supp.2d 1331 (M.D. Fla. 2011). However, if the asserted policy language is susceptible of more than one reasonable interpretation, the policy is considered ambiguous and strictly construed against the policy's drafter. Anderson, 756 So.2d at 34. "[E]xclusionary clauses are construed even more strictly against the insurer than coverage clauses." Id. While the insured has the burden of proving that a claim against it is covered by the insurance policy, the insurer has the burden of proving an exclusion to coverage. LeFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir. 1997). According to the majority view, the burden of proving an exception to a policy exclusion is on the insured. Id.

This is not a close case. The policy language is not ambiguous.

**WHEREFORE**, the Court enters Final Summary Judgment for Berkley on its complaint. The relevant policy (VUMC0080321) and Florida law provide no duty of

Berkley to indemnify or defend EAP on any part of the underlying federal au pair wage case.

**DONE AND ORDERED** at Tampa, Florida, on September 27, 2018.

s/*William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
Counsel of Record